### STONE v. COHEN et al.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

CONTRACT—WAIVER OF CONDITIONS.

A contract for the sale of a lot by defendant, on condition that the vendee erect a building thereon with money to be advanced at different times by defendant, provided that one of the payments should be made when the white coat of plaster was on, but that, if any mechanic's lien should be filed and remain unsatisfied for 10 days, defendant might refuse to make further advances. Plaintiff, who contracted to do the plastering, received from the vendee an order on defendant, who accepted it with the condition that it should be "payable when the white-coat payment becomes due, and payable according to the terms of the building loan agreement," and at the same time, when informed by plaintiff that there were liens on the building, told him to "Go ahead; never mind; I will see that you are paid,"—and, when the white coat was on, promised to pay plaintiff in a few days, telling him to go on and finish the work without regard to the liens. *Held* sufficient to show a complete waiver of the stipulation respecting liens theretofore or thereafter filed.

Appeal from court of common pleas, trial term.

Action by Alfred E. Stone against Abraham Cohen and others to recover on an order for the payment of money. From a judgment

entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendants appeal.    Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

George H. Yeaman, for appellants.

M. E. Duffy, for respondent.

PATTERSON, J.    This action was brought upon an order for the payment of money, drawn by the defendant Francis McCormick on the defendant Julius Lipmann, and dated the 14th day of February, 1890, by which order the defendant Lipmann was requested to pay to John Burke the sum of $850 "when the white coat of mortar is on the houses Nos. 164 and 166 East 112th street." This order was presented to the defendant Lipmann, who accepted it in the following words: "Accepted, payable when white-coat payment becomes due and payable according to the terms of the building loan agreement on house south side 112th street." The claim thus arising was assigned by John Burke to this plaintiff.

The complaint alleges the performance of the condition upon which the amount named in the order became due and payable according to the terms of the acceptance.    The separate answer of the defendant Lipmann admits the making and acceptance of the order, but sets up, in connection with such admission, that there was a certain builder's loan contract or agreement relating to the house mentioned in the acceptance, which agreement was executed between one Alice McCormick, the wife of Peter McCormick, and the defendant Lipmann, providing for the sale by Lipmann to Alice McCormick of a lot of ground, being that referred to in the complaint, upon certain terms, and subject to certain mortgages, and further providing that Alice McCormick should build upon the premises a five-story tenement house, Lipmann contracting to advance her the sum of $10,000, in payments of $1,000 each, at various stages of the progress of the work of building.    By a clause of the agreement it was provided that the sum of $1,000, the seventh payment, should be paid when the white coat of plaster was on and the stairs up, but that the defendant might make, at his option, any of the payments under the contract, before they became due according to the strict terms of the agreement, without waiving his right to enforce such terms; and it was also provided that, if the work were suspended for 10 days, or if any mechanics' liens should be filed against the premises and remain unsatisfied or on file for 10 days, then Lipmann might refuse, at his option, to make any further advances to the McCormicks, and that both the principal and interest on the mortgage should become due.

It would appear that Alice McCormick disposed of her interest in this contract and property to Francis McCormick, and Francis McCormick subsequently assigned to one Young, who seems to have become jointly interested with him in the building enterprise.    John Burke became connected with the subject by reason of his being the contractor for the plastering work upon the buildings, under a con-

tract made December 9, 1889, to plaster the house for the sum of $1,850, which he was to receive in three payments, namely, $800 when the brown mortar was on, $900 when the white mortar was on, and $150 when the plastering was fully done. It sufficiently appears in evidence that the contractor, Burke, fully performed his contract concerning the plastering. When the brown mortar was on Burke was unwilling to proceed further without being in some way secured for future work under his contract, and the order sued upon was given for that reason. Evidently it was intended to secure the greater part of the installment that would become due for the white plastering. It is so stated in the evidence, and in the order, and in the acceptance, all of which indicate that it was Lipmann's agreement to pay it out of the particular $1,000 installment to become due when the white plastering was on and the stairs were up. At the time the order was accepted, Burke told Lipmann that there were some liens on the building, and Lipmann said: "Go ahead; never mind; I will see that you are paid." And he also said that there was a payment due McCormick when the white mortar was on. The liens then on the premises were the first two mentioned in the answer of the defendant Lipmann. On the 13th of March, 1890, another lien for $1,600 was placed upon the building, and the defendant Lipmann claims that he was, therefore, not liable upon the order.

The evidence shows that Burke fully completed his contract for the plastering, and the questions arising in the case are purely as to matters of fact. At the trial there were three of such matters litigated, each of which was submitted to the jury under proper instructions, and in a very clear way, by the learned justice presiding. The distinct question arose as to the liability of Lipmann upon the order, notwithstanding breaches of the building loan contract respecting the completion of the white plaster coat and the stairs, and also respecting the filing of liens and their remaining on record for more than 10 days. Upon the subject of the completion of the work in accordance with the requirements of the contract, and of acceptance of the order, the defendant requested the court to charge that, unless the jury believed that the order sued on became due and payable under the terms of the building loan agreement referred to in the defendant's acceptance of the order, relating to the white-plaster coat and the stairs, they must find for the defendant. That instruction was given to the jury in the words of the request. They were charged concerning the state of the evidence upon that point, and there was undoubtedly sufficient in the case to show, not only that the work was done, but that Mr. Lipmann himself admitted, in his conversation with Burke, that it was finished in time, and in such a way as to entitle Burke to the payment of the money. It is unnecessary to refer specifically to the particular evidence upon that subject, but there was testimony that Lipmann acknowledged his liability to pay, and urged Burke to go on with the work of patching and pointing up, and thus to complete the last work under his contract, in a manner to entitle him to a third and final payment.

On the subject of the existence of the liens upon the property, the defendant requested the court to charge the jury that, if they be-

lieved, from the evidence, that the mechanic's lien of $1,600 placed on the property on the 12th of March, 1890, was allowed to remain on record 10 days, they must find for the defendant, even though they believed that the work had been completed according to the contract. This the court charged, but with the very material addition that, if the jury believed, from the evidence, that the condition as to mechanics' liens was waived, the instruction would not be applicable. The whole contention on the part of the plaintiff with respect to the mechanics' liens was that they were waived from the beginning; that is to say, from the time of the inception of the $850 order. That order was dated on the 14th day of February, 1890, and with reference to which, and its acceptance, the testimony of Burke is that, when the order was presented to Lipmann, Burke said, "There are a couple of liens on there." Lipmann said, "Never mind that; I will see that you are paid." He stated, "I have enough money; go ahead." He said there was a payment due McCormick when the white coat of mortar was on. He said there was a white-coat payment becoming due, and he would secure that. This was relied on as a waiver of any condition respecting mechanics' liens, and evidence was given of what transpired between Burke and Lipmann on the 10th day of March, 1890, indicating that Lipmann's own construction of the conversation of February 14, 1890, was that all conditions of the contract, the building loan, as to mechanics' liens, were waived in favor of Burke, in order that he might be induced to go on and complete his plastering contract. On the 10th of March Burke had an interview with Lipmann, and then stated to Lipmann that the white-coat mortar was on, and that his payment was due. He testifies that Lipmann said, "All right, Mr. Burke; I am property poor at the present time, and, if you will wait a few days, I will give it to you." He said there was still money due to McCormick, and that he had the money still in his possession He told Burke not to be afraid, to go ahead and finish the work, and point up, which would come under another payment, and he would make the two together. He said that he would see Burke paid, who remarked, "There are liens going on there." He said, "Never mind the liens; go ahead, and finish up, and I will pay you. My word is as good as that paper." All this was evidence going to show a complete waiver on the part of Lipmann of any right he might have had to insist upon the provisions of the contract respecting liens. The testimony as to what took place on March 10th was not offered as establishing a new promise on the part of Lipmann, but as evidence of what his understanding was concerning the liens at the time he accepted the order for the $850, as well as the date of the last conversation. Now, the lien for $1,600 was not filed until March 13, 1890, three days after the conversation of March 10th. There was, therefore, abundant evidence to go to the jury that, on March 10th, Lipmann had promised to pay the order, and recognized that he had waived all stipulations respecting liens theretofore placed, or thereafter to be placed, upon the property, and reiterated what he had substantially bound himself to respecting liens at the time the order was given. The conflicting evidence on the subject

of this waiver was properly submitted to the jury, and upon that subject their verdict should not be interfered with.

Another question of fact arose with reference to some arrangement having been made between Burke and Young by which the former agreed to look to the latter for the payment to be made for his plastering under the contract with McCormick, so as to relieve Lipmann from his obligation to pay the order sued upon. The court was requested to charge the jury with reference to this matter, and the request was complied with in the language in which it was presented to the court. There was a dispute as to whether or not certain notes given by Young were given on account of the work done by Mr. Burke; but Burke expressly swears that he received only two notes, of $300, which were accommodation notes of Young, given to him to raise money upon, but that they were utterly worthless, and no money was raised upon them, and they were in no sense intended for or accepted as payments on account of the plastering work, nor recognized as obligations of Young given on account of that work. Whether they were or not was submitted to the jury, who found against the defendant Lipmann on that issue of fact.

We find no error in the whole trial of such a character as would call for a reversal of the judgment as to the defendant Lipmann. The plaintiff's claim in the order is a just one, for work fully and honestly performed, and the judgment should be affirmed.

Judgment and order denying motion to set aside the verdict, and to grant a new trial, affirmed, with costs. All concur.